Case 4:20-cv-02962   Document 37   Filed on 01/12/21 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
January 12, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| OLGA BLAKLEY, M.D., P.A., ET AL., § § Plaintiffs. § § VS. § NORMAND F. PIZZA, ET AL., § § Defendants. § § § § § | CIVIL ACTION NO. 4:20-CV-02962 |

## **MEMORANDUM AND RECOMMENDATION**

Before me is Defendants' Motion to Dismiss Pursuant to Rule 12(b)(2) ("Motion to Dismiss"). *See* Dkt. 10. In the Motion to Dismiss, Defendants Normand F. Pizza ("Pizza") and Milling Benson Woodward LLP ("Milling Benson") argue that this case should be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Having reviewed the parties' briefing on the Motion to Dismiss, and analyzed the applicable law, I recommend that the Motion to Dismiss be **GRANTED**.

## BACKGROUND

Milling Benson is a Louisiana law firm with four offices scattered across Louisiana. Pizza is a partner at Milling Benson and is licensed to practice law in the State of Louisiana. According to Plaintiffs' lawsuit: "On or about May 2013 Olga P. Blakley M.D. [("Blakley")] retained Pizza and his firm, Milling Benson Woodward LLP, to represent her in [a] matter with [the] Louisiana State Board of Medical Examiners." Dkt. 1-2 at 5.

Blakley, a Texas resident, originally filed this case in state court in Fort Bend County against Milling Benson and Pizza. In her original lawsuit, which was timely removed to federal court, Blakley alleges that Pizza falsely "represented himself as an expert in successfully representing Medical Doctors before the [Louisiana State Board of Medical Examiners] and effectively and inexpensively resolving their matters." *Id.* In what is, effectively, a legal malpractice claim, Blakley alleges that Milling Benson and Pizza overcharged Blakley and performed "useless and unnecessary" work on her behalf. *Id.* at 7. The sole cause of action is a fraud/fraudulent representation claim in which Blakley avers that Milling Benson and Pizza falsely "represented that they would provide an effective defense to resolve the [Louisiana] matter." *Id.* at 6.[1]

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of an action when a court lacks personal jurisdiction over the defendant. "When a nonresident defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the defendant." *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). In deciding whether the plaintiff has met that burden at this early stage in the case, "the court must accept as true all uncontroverted allegations in the complaint and must resolve any factual disputes

---

[1] There are two additional plaintiffs in this case: Natalie Blakley and Julia Blakley. It appears from the operative pleading that these two individuals are Blakley's minor children, who allegedly endured adverse health consequences as a result of the stress caused by Milling Benson and Pizza.

2

in favor of the plaintiff." *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 496 (5th Cir. 2012). To determine whether personal jurisdiction exists over a defendant, the district court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When a district court rules on a Rule 12(b)(2) motion without an evidentiary hearing, as is the case here, the plaintiff may establish personal jurisdiction by presenting a *prima facie* case that personal jurisdiction is proper. *See Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). After a plaintiff makes his *prima facie* case, the burden then shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

"A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019). "To comport with due process demands, a plaintiff in a diversity case must establish that the non-resident defendant purposely availed himself of the benefits

3

and protections of the forum state by establishing minimum contacts with the state and that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Zoch v. Magna Seating (Ger.) GmbH*, 810 F. App'x 285, 288 (5th Cir. 2020) (cleaned up).

The United States Supreme Court has recognized two kinds of personal jurisdiction: general jurisdiction and specific jurisdiction. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1779–80 (2017). General jurisdiction exists over a non-resident defendant when its "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The specific-jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quotation omitted). For this reason, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (quotation omitted). Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The Fifth Circuit "uses a three-step analysis for specific jurisdiction: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action

4

arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Ward v. Rhode*, 544 F. App'x, 349, 352 (5th Cir. 2013) (quotation omitted). "Specific jurisdiction should be determined on a case-by-case basis under the facts of each individual case." *Zoch,* 810 F. App'x at 293.

## ANALYSIS

Blakley does not argue that general jurisdiction exists in this case, as Milling Benson and Pizza's contacts with the Lone Star State are far from continuous and systematic. Indeed, the operative pleading acknowledges that Milling Benson is "a professional limited liability company organized and existing in the [S]tate of Louisiana" and Pizza is a licensed Louisiana lawyer with "his usual place of business" located in Mandeville, Louisiana. Dkt. 1-2 at 4–5. Instead, Blakley argues that this Court has specific jurisdiction over Milling Benson and Pizza because she resides in Texas, the attorney-client relationship was formed in Texas, and because Milling Benson and Pizza directed multiple communications into Texas.

Unsurprisingly, I am not the first member of the judiciary to address the propriety of exercising specific jurisdiction over nonresident attorneys. My reading of the relevant case law uncovers a few basic underlying principles worth mentioning. First, the "mere existence of an attorney-client relationship, unaccompanied by other sufficient contacts with the forum, does not confer personal jurisdiction over the non-resident in the forum state; more is required." *Ahrens & DeAngeli, P.L.L.C. v. Flinn*, 318 S.W.3d 474, 484 (Tex. App.—Dallas

5

2010, pet. denied) (quotation omitted). *See also Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) ("merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction"); *Gray, Ritter & Graham, PC v. Goldman Phipps PLLC*, 511 S.W.3d 639, 657 (Tex. App.—Corpus Christi 2015, pet. denied) (For specific jurisdiction, "a nonresident attorney's act of entering into an attorney-client relationship with a Texas resident, standing alone, does not provide the minimum contacts necessary to support personal jurisdiction over the nonresident attorney.").

Second, "where the underlying case involves a legal malpractice action, the focus for personal jurisdiction purposes should be on where the attorneys performed the legal work at issue." *Abilene Diagnostic Clinic, PLLC v. Paley, Rothman, Goldstein, Rosenberg, Eig & Cooper, Chartered.*, 364 S.W.3d 359, 365–66 (Tex. App.—Eastland 2012, no pet.) (Texas did not have specific jurisdiction over Maryland attorney arising from errors attorney allegedly made in drafting defined benefit plans for member physicians because attorney and firm did not purposefully avail themselves of benefits and protections of Texas law). *See also Ahrens*, 318 S.W. 3d at 484–85 (specific jurisdiction did not exist in Texas over Washington law firm where the legal work at issue "was performed in Washington or Idaho [for a Texas client], and the communications were made from there to Texas").

Third, the nonresident lawyers must undertake "specific, purposeful act[s] through which [they] can be said to have sought a benefit by availing [themselves]

6

of the jurisdiction." *Ahrens*, 318 S.W. 3d at 479 (quotation omitted). "For example, the nonresident attorney must take affirmative action to promote business within the forum state." *Id.* at 484. "Telephone calls and correspondence as activities directed at the forum state are generally insufficient." *Id. See also Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) ("[T]his Court has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant.").

Applying these well-settled principles here, it is crystal clear that a federal court in Texas does not have specific jurisdiction over Milling Benson and Pizza. Blakley hired Milling Benson, a Louisiana law firm, and Pizza, a Louisiana lawyer, to represent her in proceedings before an administrative body in Louisiana. This matter did not arise from, or relate to, activities conducted in Texas. Tellingly, there is no claim that Milling Benson and Pizza performed any work in Texas in connection with this engagement, or that they travelled to Texas in furtherance of their representation on this matter. "The mere existence of an attorney-client relationship between the out-of-state attorneys here and [Blakley] does not confer personal jurisdiction, and there is no evidence that [Pizza] or any member of the law firm promoted or solicited business in Texas." *Ahrens*, 318 S.W.3d at 484.

7

Blakley argues that there is a Texas connection because Milling Benson and Pizza "placed phone calls into Texas, sent mail into Texas, sent electronic mails into Texas, . . .and did send bills and status reports into Texas." Dkt. 16 at 4. As already noted, this level of contact with Texas is wholly insufficient to support purposeful availment for purposes of specific jurisdiction. *See Geo-Chevron Ortiz, Ranch #2 v. Woodworth*, No. 04-06-00412-CV, 2007 WL 671340, at *5 (Tex. App.—San Antonio Mar. 7, 2007, pet. denied) (no specific jurisdiction in Texas for Georgia lawyer handling Georgia litigation for Texas client despite communications directed to client in Texas); *Credit Com. de Fr., S.A. v. Morales*, 195 S.W.3d 209, 220–21 (Tex. App.—San Antonio 2006, pet. denied) (holding that "minimum contacts may not be satisfied by merely engaging in communications with a Texas corporation during performance of a contract"); *Daniels v. Blodgett*, No. 05-04-00626-CV, 2005 WL 1120010, at *3 (Tex. App.—Dallas May 12, 2005, no pet.) (nonresident attorney not subject to specific jurisdiction in Texas based solely on telephone conversations directed to Texas client); *Myers v. Emery*, 697 S.W.2d 26, 32 (Tex. App.—Dallas 1985, no writ) (holding that Oklahoma law firm hired to handle Oklahoma litigation not subject to specific jurisdiction in Texas despite sending documents and directing phone calls to Texas client).

Claiming that she signed the Milling Benson engagement letter at her home in Fort Bend County, Texas, Blakley argues that somehow independently gives rise to specific jurisdiction over Milling Benson and Pizza. She is mistaken. For jurisdictional purposes, the place Blakley signed the engagement letter is

8

irrelevant. Blakley cannot create specific jurisdiction by signing the engagement letter in the locale of her choosing. The only relevant contacts are the contacts Milling Benson and Pizza, as defendants, had with the forum. *See Walden*, 571 U.S. at 284 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."). Blakley's unilateral activity is not sufficient to hale out-of-state residents like Milling Benson and Pizza into a Texas court. *See Proskauer Rose, LLP v. Pelican Trading, Inc.*, No. 14-08-00283-CV, 2009 WL 242993, at *4 (Tex. App.—Houston [14th Dist.] Feb. 3, 2009, no pet.) (holding that Texas client's signing an engagement letter in Texas and sending the agreement with a check to an out-of-state law firm were not contacts for the purposeful availment analysis).

Finally, Blakley claims that she suffered injury in Texas. That, however, is also insufficient to give rise to specific jurisdiction. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 401 (5th Cir. 2009) ("The plaintiff's residence in the forum, and suffering of harm there, will not alone support personal jurisdiction." (cleaned up)).

In sum, any contacts Milling Benson and Pizza had with the State of Texas arising from their representation of Blakley before the Louisiana State Board of Medical Examiners were minimal and fortuitous and not the result of purposefully conducted activities within Texas. Put another way, the contacts related to Milling Benson and Pizza's "legal representation of [Blakley] are not the type of contacts

9

that show [they] purposefully availed [themselves] of the benefits and protections of Texas law." *Ahrens*, 318 S.W.3d at 485. Accordingly, this case should be dismissed for a lack of personal jurisdiction.

## CONCLUSION

For the reasons identified above, I **RECOMMEND** that the Motion to Dismiss be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 12th day of January 2021.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE