IN THE UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED
MAY 17 2021
Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| OLGA P. BLAKLEY, M.D., P.A., | * | NO. 4:20-cv-02962 |
| NATALIE BLAKLEY, AND | * | |
| JULIA BLAKLEY | * | |
| VERSUS | * | JUDGE GEORGE HANKS, Jr |
| | * | |
| NORMAND F. PIZZA AND | * | |
| MILLING BENSON WOODWARD LLP | * | MAGISTRATE EDISON |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF OLGA P. BLAKLEY, M.D., P.A., SUPPLEMENTED RENEWED MOTION TO RECONSIDER AND ALLOW DISCOVERY FOR THE TRIAL BY JURY.

TO THE HONORABLE JUDGE OF THIS COURT:

NOW INTO COURT, comes Plaintiff Olga P. Blakley M.D., P.A., et al, and is respectfully submitting a Supplemented Renewed Motion in accordance with Federal Rules of Civil Procedures 50(b), 52(a), 59 and 60, due to still pending entry of the order issued disposing remaining Motion to reconsider and allow discovery for the Jury Trial in the abovementioned case, that has been entered on the docket for 03/30/2021, then subsequently for 04/17/2021.

1) In light of a new Supreme Court ruling in March 2021, in _Ford Motor Co. v. Montana Eighth Judicial District Court_, the Supreme Court held that a state may, under certain (frequently occurring) circumstances, exercise personal jurisdiction over an out-of-state company when the plaintiff is a resident of the state and was injured in the state, even if the company's allegedly tortious conduct occurred outside the state.

The decision expands the circumstances under which companies may be subject to personal jurisdiction in a state.

A unanimous Supreme Court held in its principal opinion, authored by Justice Kagan, placed emphasis on the disjunction of the phrase "arise out of *or* relate to." <u>It means, said the Court, that a state may exercise specific personal jurisdiction over a defendant even if the plaintiff's injury was not caused by—*i.e.*, does not arise out of—the defendant's in-state conduct.</u>

It is, the Court held, sufficient that the plaintiff's injury "relates to" a defendant's in-state activity.

The Supreme Court strongly suggested, that a state may exercise specific personal jurisdiction over an out-of-state company defendant only if the plaintiff resides and was injured in that state (which plaintiff in this case satisfies this requirement).

The Supreme Court ruling affirmed that now nationally active companies (which Defendants Milling Benson LLP advertise themselves as such – see paragraph 2) are potentially subject to suit in any state in which a resident plaintiff suffers injury from the corporation's products or services.

2) Milling Benson LLP advertising themselves as nationally and internationally active company as follow:

https://www.millinglaw.com/about-us/

https://louisianarecord.com/stories/584210903-law-firm-harassed-and-discriminated-against-female-attorney-for-being-pregnant-lawsuit-says

Milling Benson Woodward L.L.P. was founded in 1896 and currently has offices in New Orleans, Baton Rouge, and Northshore New Orleans.

"Our Firm has represented clients in domestic and international business transactions, litigation, arbitration, and maritime matters involving clients' activities throughout the United States, Canada, Europe, Central and South America, Russia, Australia and the Pacific Rim, including Indonesia and Japan. As the first law firm in Louisiana to subscribe to the American Bar Association Law Pro Bono Project, Milling Benson Woodward L.L.P. has a long history of commitment to public service and the betterment of our community. Firm partners have served as Chair of the Louisiana State Law Institute, as Presidents of the New Orleans Bar Association, and as Presidents of the Louisiana State Bar Association. They have also served on the Board of Governors of the American and National Bar Associations, among many other legal, leadership, and professional distinctions.

The Firm seeks to provide the highest quality of legal services through effective and creative representation. To that end, we utilize our principal resources: the talent and expertise of our lawyers, our collective experience and accumulated work product, the dedication of our support staff, the latest in technological support, and our tradition of rendering prompt, efficient and effective legal services.

The Firm is committed to rendering services in an economical manner. A number of billing arrangements are offered as alternatives to standard hourly rates. The Firm is a signatory to the Center for Public Resources, Inc., Statement of Alternatives to Litigation, and subscribed to its Policy Statement by pledging to use alternatives dispute resolution procedures, where appropriate, to reduce our clients' costs and the burden of litigation.

Contrary to Milling's public statement on their website, Milling has consistently refused arbitration by the Louisiana Bar Association. See Attached.

3) Further, in the past the U.S. Supreme Court had restricted the ability to sue out-of-state defendants without their consent. But at the present time with new progressive changes in our society in *Ford Motor Co. v. Montana Eighth Judicial District (httpsuwww.supremecourt₉oviopinionsizop409-368_febh.pdp,* the court allowed an out-of-state company to be sued.

The SCOTUS decision in March, 2021 expanded allowance of personal jurisdiction,

The Defendants in the case before this Honorable Court had numerous contacts with the Plaintiff in the home state of Texas – where the Plaintiff signed the Representation agreement here, where the Plaintiff was performing her contractual obligations, where the Defendants regularly sent electronic and written communications to Plaintiff there, and the injury and damages occurred here, in Texas.

In the past Supreme Court held that unless the defendant consents to jurisdiction of the court, an out-of-state defendant can be sued only if it has "minimum contacts" with a state.

The court previously had found that the activities of the sales representatives (Normand Pizza and Milling Benson) of an out-of-state company—exhibiting or proclaiming examples of self-proclaimed previously successful, "efficient and effective services" (that was a deceptive advertisement as subsequently discovered from ex-clients of Normand Pizza and Milling Benson, who breached the contract on numerous occasions and failed their fiduciary duties and failed to work in the best interest of the client(s), thus causing damages to their clients); and soliciting orders from prospective buyers and conducting interstate business.

The court thus previously found personal jurisdiction and concluded that it is constitutionally permissible when a defendant has minimum contacts with the state where a lawsuit is brought such that notions of fair play and substantial justice would not be offended (which would not be offended by nationally active company Milling Benson LLP participating in the trial in Texas, but would be offended if Plaintiff a solo provider woman with dependent children would be forced to travel to seek justice out of their home state to Louisiana, where Defendant

Specific jurisdiction exists where the defendant's contacts with the state give rise to the cause of action. The court has restricted this, too, in recent years. For example, in *Walden v. Fiore (https://www.supremecourtgov/opinions/13pdf/12-574_8mj9.pdf)* (2014), the court stressed that it is not enough that the defendant's conduct would foreseeably cause injury in a state; there is not personal jurisdiction if the defendant did not have the contacts with the state where the suit is brought.

**Supreme Court finds personal jurisdiction**

The court declared: "When a company like Ford serves a market for a product in a state, and that product causes injury in the state to one of its residents, the state's courts may entertain the resulting suit." Kagan's majority opinion stressed two factors in finding specific jurisdiction: purposeful availment and relatedness.

The fact that the vehicles were purchased in other states did not matter. The court explained that Ford's marketing in these states and the availability of its service there well could have caused these plaintiffs to purchase the Ford vehicles.

In her opinion in *Ford Motor Co. v. Montana Eighth Judicial District,* Kagan distinguished the case based on the plaintiffs. She said that in *Bristol Myers Squibt,* the plaintiffs had not been prescribed the drug, Plavix, in California, and they had not ingested it there or been injured there. (Exhibit A)

4) Actively advertised as nationally active company, Milling Benson wouldn't be prejudiced in the participating in the trial in Texas; however, the Plaintiff – a solo provider minority woman, a mother of 3 (three) dependent children, with severe health problems who suffered 2 (two) heart attacks caused by the stress of litigation imposed by the Defendants - would be severely prejudiced if this court would force her to travel for the trial out of state.

5) It has been long decided, that forum's state duty is to protect the interests of its citizens – such as in this case – a minority woman and her dependent children.

6) Defendants Normand Pizza and Chadwick Collings of Milling Benson LLP, have been acting very discriminatory against the plaintiff - minority woman and her dependent children, treating

the plaintiff very diminishing and as unworthy of any consideration. When requested by the plaintiff - woman in life-threatening health condition after near-deadly heart attack to allow her some time to recover and regain physical and psychological strength after the heart attack, Chadwick Collings replied that he didn't care and refused any human consideration to allow the woman time for recovery, as her weak condition causing her physical inability to participate in litigation would be beneficial for him being a strong man to prevail over the weak woman.

Defendant Normand Pizza didn't consider his client-woman to be worthy of making the informed consent and revealing her his pre-existing professional and personal conflicts of interest with Plaintiff's opposing party.
(See Exhibit attached of other Defendant's discriminatory and diminishing actions against woman for her decision to have children that she would need to be present for – as in this case the woman-plaintiff had requested defendants simply some time to recover to stay alive for her children).

7) There is a <u>newly discovered evidence</u> that Defendant Normand Pizza represented 9 out of 13 state of Louisiana judges before judicial commission in Louisiana (See Exhibit B). This creates very strong conflict of interest, having so many judges in Louisiana as ex-clients of defendant's Normand Pizza/ Milling Benson. Therefore, the Plaintiff would be severely prejudiced if this Honorable Court would disregard this circumstance as the justice could not be expected to be impartial in the state of Louisiana, in case if the forum state of Texas, decline her right for the trial by jury in Texas, that Plaintiff requested and paid for. *(See Exhibit B).*

The Plaintiff is requesting that notions of fair play and substantial justice would not be offended against her rights of fair play and substantial justice.

8) The Plaintiffs (Ethnic minority woman and her dependent children) would be irreparably harmed if the case in not tried in Texas, but referred to Louisiana.

9) Plaintiff's is asserting her civil and constitutional rights to be protected by this court.

10) Plaintiff was denied a right to be fully heard on the issue by being denied an opportunity to participate in Pre-Trial conference, that the Plaintiff could not participate due to heart attack, and was prejudiced by that.

11) Also, the Plaintiff has been repeatedly respectfully requesting to be allowed Electronic Filing in the abovementioned case that has been requested numerous times and has been allowed to other Pro Se litigants, but has not been allowed to the Plaintiff in this case as evidencing prejudice as the adversary party has been allowed electronic filing in this case.

The grounds for reconsideration are outlined in the submitted motion docketed for 03/30/2021, and subsequently for 04/17/2021.

Therefore, the handling of this case should be reconsidered, and reassigned to another Judge for the trial in accordance with the right for the trial by jury as the case has been filed and paid for (Not for the unilateral decision and disposition by the judge), as the trial has not been conducted.

**Respectfully submitted,**

**Olga P. Blakley M.D., P.A. et al on 5/14/21**

**via in court submission**

**electronic submission has not been**

**allowed yet to a Pro Se Litigant -Woman**

**after a Heart Attack)**

*s/Olga P. Blakley*

**Olga P. Blakley M.D., P.A.**
   *Pro Se*
**c/o William R. Pakalka**

**Attorney at Law**

11 Lorrie Lake Lane

Houston, Texas 77024-7119
(713) 781-5083
billpakalka@yahoo.com
Cc – via Email

Chadwick W. Collings

The Plaintiff is objecting to mishandling due to severe continuous discrimination, bias and violation of the civil and constitutional rights, including guaranteed by the Constitution right for Equal Protection.

    1.    Plaintiff (minority woman) was not allowed Electronic filing as other Pro Se Litigants (men) were allowed, as documented and recorded on December 17, 2020 Pre-Trial Conference. This is a gender discrimination.

    2.    Other Pro Se litigants were allowed convenience of electronic filing via 2 (two) different means – via email and via submission on Pacer (even without having severe health problems reported to the Court) – as evidenced and documented in the recorded Pre-Trial Conference held by Judge Edison on December 17, 2020. However, the Plaintiff up to date has Not been allowed convenience of electronic filing submission to this same Court, despite having filed a written request for such electronic submission, and despite having suffered near Lethal Heart Attack – this is unspeakable, unthinkable, unexplainable discrimination, with bias in favor of the Defendants (professional lawyers); making it much more difficult for the Plaintiff to participate in the case, and creating additional stress on the Plaintiff.

3. In this modern society of the United States of America in 21-st century, with developed electronics, Defendants (lawyers) being allowed to file All of Their Legal Filings Electronically – but the Plaintiff (a Pro Se litigant) was Not allowed Electronic filing even in in leu of national disaster of COVID pandemic, and was forced to file in person. This is incomprehensible, biased and discriminatory handling of Judge Edison in apparent favor of Defendants – lawyers.

4. Judge Edison has been apparently biased in favor of his legal profession colleagues –Defendant lawyers Pizza, and Milling, Benson. During Pre-Trial Conference, the legal jargon discussion was about "Pretty Vanilla Case" presentation by the lawyers, with the Plaintiff, being Pro Se litigant without legal education, could not present any "Pretty Vanilla Case", as this is a heart-breaking case with near death heart attack experience, caused by the stress, pain and suffering caused by the Defendants; and near-complete destruction of family, children's lives and finances; caused by the Defendants.

5. Plaintiffs submitted Unopposed Motion to Continue, as the Defendants were "indifferent" and did not oppose to the Motion to Continue Due to Heart Attack – but apparently biased Judge Edison did not grant even Unopposed motion to continue due to personal tragedy of the Plaintiff – as there is nothing is much worse of the personal tragedy, as tragedy having Near Death personal heart attack, that Plaintiff had during the course of this case, that was not considered or respected by Judge Edison, despite his own promise (as evidenced and documented in the recording of the Pre-Trial Conference on December 17, 2020) – to consider and allow additional time in consideration of even "the holiday season" of Christmas, or "personal tragedy" – as the Plaintiff had in this case – but was not respected or considered by Judge Edison despite his own promise. Plaintiff had requested to allow continuance to allow time for recovery after the heart attack to be able to participate in Pre-Trial conference at the later date, but Judge Edison did not allow to move the date of Pre-Trial Conference, so Plaintiff could not participate due to fear to lose own life in case of possible re-infarction in case of stress of participation in the stressful event. That is another unhuman, unthinkable, unexplainable example of bias and discrimination by Judge Edison.

Home / Columns / Chemerinsky: Despite SCOTUS ruling, questions...

U.S. SUPREME COURT

# *Chemerinsky: Despite SCOTUS ruling, questions of personal jurisdiction remain unsettled*

BY ERWIN CHEMERINSKY (HTTPS://WWW.ABAJOURNAL.COM/AUTHORS/9822/)

MAY 3, 2021, 8:52 AM CDT

Like 23    Share    Tweet  Share  



*Erwin Chemerinsky. Photo by Jim Block.*

For the last two decades, the U.S. Supreme Court has consistently restricted the ability to sue out-of-state defendants without their consent. But in *Ford Motor Co. v. Montana Eighth Judicial District* (https://www.supremecourt.gov/opinions/20pdf/19-368_febh.pdf), the court allowed an out-of-state company to be sued.

The decision, handed down in March, is important in clarifying the law of personal jurisdiction, but it also raises many questions that will confront lower state and federal courts and ultimately need Supreme Court resolution.

## Some background

Every first-year law student in civil procedure reads the famous case of *International Shoe v. State of Washington* (https://www.law.cornell.edu/supremecourt/text/326/310) (1945). Before this case, the court long had ruled that due process limits the ability to sue an out-of-state defendant without its consent. In *International Shoe,*

the Supreme Court held that unless the defendant consents to jurisdiction of the court, an out-of-state defendant can be sued only if it has "minimum contacts" with a state.

The court found that the activities of the sales personnel of an out-of-state shoe company—exhibiting samples of merchandise and soliciting orders from prospective buyers—were systematic and continuous and resulted in a large volume of interstate business. The court thus found personal jurisdiction and concluded that it is constitutionally permissible when a defendant has minimum contacts with the state where a lawsuit is brought such that notions of fair play and substantial justice would not be offended.

In the decades after *International Shoe*, the court found two ways of finding minimum contacts: general jurisdiction and specific jurisdiction. Both have been greatly narrowed in recent years. It used to be that general jurisdiction could be found if the defendant, in the words of *International Shoe*, had "continuous and systematic" contacts with the state.

But in cases such as *Goodyear Dunlop Tires Operations v. Brown* (https://supreme.justia.com/cases/federal/us/564/915/#tab-opinion-1963650) (2011) and *Daimler AG v. Bauman* (https://www.law.cornell.edu/supct/pdf/11-965.pdf) (2014), the court held that general jurisdiction exists only when a defendant is "essentially at home" in the state. An individual is subject to general jurisdiction in his or her state of domicile, and a corporation is "home" in the state where it is incorporated or has its principal place of business.

Specific jurisdiction exists where the defendant's contacts with the state give rise to the cause of action. The court has restricted this, too, in recent years. For example, in *Walden v. Fiore* (https://www.supremecourt.gov/opinions/13pdf/12-574_8mj9.pdf) (2014), the court stressed that it is not enough that the defendant's conduct would foreseeably cause injury in a state; there is not personal jurisdiction if the defendant did not have the contacts with the state where the suit is brought.

Most recently in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County* (https://www.law.cornell.edu/supct/pdf/16-466.pdf), (2017), the Supreme Court refused to allow out-of-state plaintiffs to sue a drug company for harms they suffered, even though they were part of a lawsuit brought by plaintiffs of the state who had suffered the same injury.

The court said, quoting *Goodyear*, that for specific jurisdiction, "there must be 'an affiliation between the forum and the underlying controversy,' principally, [an] activity or an occurrence that takes place in the forum state and is therefore subject to the state's regulation.'" The court stressed that personal jurisdiction is not only about fairness to the defendant; it also is about the constitutional reach of a state's territorial authority.

There is no doubt that this trend in the law greatly favors defendants, making it harder to hale them to other states to be sued and making it more difficult for plaintiffs to bring suits in forums that are most convenient for them. In light of this trend, the question was how much further the court would go in limiting personal jurisdiction.

## Suits against Ford Motor Co.

Two cases came to the Supreme Court together that involved individuals who had been injured in Ford motor vehicles. Markkaya Gullett was driving a 1996 Ford Explorer near her home in Montana when the tread separated from a rear tire. The vehicle spun out, rolled, and came to rest upside down. She died in the accident, and her estate sued Ford in Montana.

Adam Bandemer was a passenger in his friend's Ford Crown Victoria in Minnesota, where he lived. The car was in an accident, and Bandemer's air bag failed to deploy. He was severely injured, suffering serious brain damage. He sued Ford in Minnesota state court.

Ford moved to dismiss both suits for lack of personal jurisdiction. There was no general jurisdiction because Ford was not incorporated and did not have its principal place of business in either Montana or Minnesota. Ford argued that there was not specific jurisdiction because in neither case had its contact with the states given rise to the cause of action there.

Ford emphasized that in neither instance had it sold the cars in the state where the accident occurred; the Explorer was initially sold in Washington and the Crown Victoria in North Dakota. As the court noted, "only later resales and relocations by consumers had brought the vehicles to Montana and Minnesota." Ford said that it had designed the Explorer and Crown Victoria in Michigan, and it had manufactured the cars in (respectively) Kentucky and Canada.

## Supreme Court finds personal jurisdiction

The high court ruled against Ford in both cases, issuing a single opinion. The result was unanimous, with Justice Elena Kagan writing for five justices. Justice Samuel A. Alito wrote an opinion concurring in the judgment, as did Justice Neil M. Gorsuch joined by Justice Clarence Thomas. Justice Amy Coney Barrett did not participate because she was not on the bench when the cases were argued in October 2020.

The court declared: "When a company like Ford serves a market for a product in a state, and that product causes injury in the state to one of its residents, the state's courts may entertain the resulting suit." Kagan's majority opinion stressed two factors in finding specific jurisdiction: purposeful availment and relatedness.

As for the former, the court said that Ford had purposely availed itself of both Montana and Minnesota in its marketing, sales and servicing of cars in those states. The court noted: "By every means imaginable—among them, billboards, TV and radio spots, print ads, and direct mail—Ford urges Montanans and Minnesotans to buy its vehicles, including (at all relevant times) Explorers and Crown Victorias. Ford cars—again including those two models—are available for sale, whether new or used, throughout the states, at 36 dealerships in Montana and 84 in Minnesota."

As for relatedness, the court stressed that "Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those states. So there is a strong 'relationship among the defendant, the forum and the litigation'—the 'essential foundation' of specific jurisdiction."

The fact that the vehicles were purchased in other states did not matter. The court explained that Ford's marketing in these states and the availability of its service there well could have caused these plaintiffs to purchase the Ford vehicles.

## Questions left open

The court's decision is notable, in part, simply because for the first time in years the justices were willing to find personal jurisdiction over an out-of-state defendant. The decision will be important in countless cases for its clarification that specific jurisdiction is to be determined by purposeful availment and relatedness.

But many questions remain. First, how is this case different from *Bristol Myers Squibb v. Superior Court*, decided just four years earlier? That case involved out-of-state plaintiffs (as well as in-state plaintiffs) suing a major corporation that aggressively marketed and sold drugs in the state where it was sued. And the lawsuit was for a particular drug that it regularly sold in that state.

In her opinion in *Ford Motor Co. v. Montana Eighth Judicial District*, Kagan distinguished the case based on the plaintiffs. She said that in *Bristol Myers Squibb*, the plaintiffs had not been prescribed the drug, Plavix, in California, and they had not ingested it there or been injured there.

She said: "In short, the plaintiffs were engaged in forum-shopping—suing in California because it was thought plaintiff-friendly, even though their cases had no tie to the state." But personal jurisdiction always has focused on the defendant's contacts with the forum state. Now has the court explicitly made the plaintiff's contacts important in personal jurisdiction analysis as well?

Second, what does it mean to "serve the market"? What does it mean to "[cause] injury in the state"? This was an easy case given Ford Motor Company's size and aggressive marketing in these states. But there is going to be much litigation over how to apply the court's holding and how these lines are to be drawn.

Third, what will be the importance of the opinions concurring in the judgment, especially Gorsuch's? Gorsuch questions *International Shoe* and especially the distinction between general and specific jurisdiction (which he mistakenly attributes to that decision).

Alito, in his opinion, says, "To be sure, for the reasons outlined in Justice Gorsuch's thoughtful opinion, there are grounds for questioning the standard that the court adopted in *International Shoe Co. v. Washington*." Might this suggest future, even more major changes in the law of personal jurisdiction in the future?

---

*Erwin Chemerinsky is dean of the University of California at Berkeley School of Law. He is an expert in constitutional law, federal practice, civil rights and civil liberties, and appellate litigation. He's the author of several books, including* The Case Against the Supreme Court *(Viking, 2014). His latest book is* The Religion Clauses: The Case for Separating Church and State, *written with Howard Gillman (Oxford University Press, 2020).*

**Give us feedback, share a story tip or update, or report an error.**

      

Copyright 2021 American Bar Association. All rights reserved.

# Lawsuit brought by FOX 8, Times-Picayune over judge's records delayed

By **Rob Masson** | March 1, 2013 at 8:47 PM CST - Updated July 11 at 1:25 AM

There is a delay in an effort by FOX 8 News and the Times-Picayune to learn more about insurance policies purchased by Orleans Criminal Court judges with public money.

FOX 8 and the newspaper are suing Criminal Court to learn more about those purchases, the subject of a scathing report by the legislative auditor. The judges paid back $72,000 to the Judicial Expense Fund after that report, but both news organizations want to review the matter in detail.

"We want to know what policies were purchased, who benefited, and then after the legislative auditor told the court you can't do that and when the policies were cashed in, what money did you get back," said FOX 8 attorney Lori Mince.

According to Mince, Civil District Judge Ethel Simms Julien entered an order on Feb. 21 directing the judges to hand over their records of those payments by Friday, or explain their refusal to do so. But that order was never served to the judges.

Mince said, "We delivered that order to the lawyer who represents the court, and he was fully aware, but the law requires the sheriff to serve him."

The Orleans Parish Sheriff's Office failed to serve the court and its attorney a notice of that order.

Judicial Administrator Rob Kazik told FOX 8 he was fully prepared to turn over documents, but didn't since he never received official notice from the Sheriff's Office, just blocks away.

Mince said, "Seeing that the civil sheriff is here on Loyola and the judicial administrator is at Tulane and Broad, it's unusual that they have not been served."

FOX 8 legal analyst Joe Raspanti said three days for service is not unusual.

"The failure of the court to turn over documents isn't surprising," Raspanti said. "I don't think anyone should read too much into a lack of service here."

Complicating matters, Rob Kazik says the judges are now in the process of replacing Normand Pizza, the original attorney in this case.

Though three days may or may not be too soon to expect all parties in a legal matter to be notified properly, there are ways to get legal notification done much faster. Raspanti said, "There are things called 'instanter subpoenas' in this building, where lives are at stake. This is about freedom of information."

All sides will return to court on March 15, and the plaintiffs are hoping that this time, proper notification will be given to all parties, to turn over the requested documents.

Though our request for documents pertains to a $72,000 reimbursement, the legislative auditor says that the judges spent a total of $600,000 on supplemental policies, including life insurance.

Orleans District Attorney Leon Cannizzaro recused himself from the case, since he's a former judge, and turned it over to the state attorney general for investigation. Friday afternoon, AG spokesman Steven Hartmann told FOX 8 the office is now reviewing the full legislative audit.

Exhibit C

<https://www.millinglaw.com/about-us/>

Milling Benson Woodward L.L.P. was founded in 1896 and currently has offices in New Orleans, Baton Rouge, and Northshore New Orleans.

Our Firm has represented clients in domestic and international business transactions, litigation, arbitration, and maritime matters involving clients' activities throughout the United States, Canada, Europe, Central and South America, Russia, Australia and the Pacific Rim, including Indonesia and Japan. As the first law firm in Louisiana to subscribe to the American Bar Association Law Pro Bono Project, Milling Benson Woodward L.L.P. has a long history of commitment to public service and the betterment of our community. Firm partners have served as Chair of the Louisiana State Law Institute, as Presidents of the New Orleans Bar Association, and as Presidents of the Louisiana State Bar Association. They have also served on the Board of Governors of the American and National Bar Associations, among many other legal, leadership, and professional distinctions.

The Firm seeks to provide the highest quality of legal services through effective and creative representation. To that end, we utilize our principal resources: the talent and expertise of our lawyers, our collective experience and accumulated work product, the dedication of our support staff, the latest in technological support, and our tradition of rendering prompt, efficient and effective legal services.

The Firm is committed to rendering services in an economical manner. A number of billing arrangements are offered as alternatives to standard hourly rates. The Firm is a signatory to the Center for Public Resources, Inc., Statement of Alternatives to Litigation, and subscribed to its Policy Statement by pledging to use alternatives dispute resolution procedures, where appropriate, to reduce our clients' costs and the burden of litigation.